HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ADAN RAUL MERINO-AGUILAR,

Defendant.

Case No. CR10-5489RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant's Motion to Suppress Evidence Seized as a Result of an Illegal Search [Dkt. #41]. Having considered the entirety of the records and file herein, the Court finds and rules as follows:

The defendant moves to suppress the evidence seized in the search of an apartment leased to Raquel Garcia-Espinoza, 10612 17th Avenue South, Unit B, Tacoma that forms the basis for Counts III and IV. He argues that DEA SA Christine Truong made false and/or misleading representations in her affidavit in support of the search warrant and as a result, the evidence should be suppressed pursuant to *Franks v. Delaware*, 438 U.S. 134. He claims that he is entitled to an evidentiary hearing to establish his claims.

Defendant Adan Raul Merino-Aguilar is charged in a Second Superseding Indictment as follows: Count I charges Distribution of Heroin on November 14, 2008, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2; Count II charges Distribution of Heroin on November 18, 2008, in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2; Count III charges Possession of Methamphetamine with the Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A), and 18 U.S.C. § 2; and Count IV charges Possession of Cocaine with the Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2.

Defendant challenges SA Truong's statement in the Affidavit that:

> During the time period of March 2010 to the present, detectives have observed members of the VARGAS DTO frequent GARCIA-Espinoza's apartment, to include Michel BUSTA-Pena, who is a runner for the VARGAS DTO and was arrested on April 15, 2010, in connection with the delivery of heroin to undercover officers.

Affidavit, para. 168. Merino-Aguilar claims that "this representation is misleading and/or false and was at least recklessly included in SA Truong's affidavit." Motion, p. 3. He complains that SA Truong omitted from the affidavit that the apartment is located in the same complex as another premises subject to search, that is the apartment at 17102 17th Avenue South, Unit L, leased by Calypso Mares. Because officers and agents saw vehicles enter, or parked at, the complex (Sienna Park Apartments) on multiple occasions, but only saw people enter Garcia-Espinoza's ("Aunt Raquel") apartment on two occasions, the statement that members of the DTO "frequent" the apartment is false and/or misleading. The defendant also argues that the affidavit alleges that Garcia-Espinoza is alleged only to be involved in money laundering, and that there is no evidence that she conducted money laundering out of her apartment. He claims that absent the challenged language, there is no nexus linking the apartment to the crime of money laundering.

The question to be answered at a *Franks* hearing is whether the affidavit contained deliberately or recklessly false statements without which probable cause would not have existed. *Franks*, 438 U.S. at 156. The five prong test which must be met in order for a defendant to be entitled to a *Franks* hearing is set out in *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) (citations omitted):

a. "[T]he defendant must make specific allegations that indicate the portions of the warrant claimed to be false";

b. "There must be a contention of deliberate falsehood or reckless disregard for the truth";

c. "The allegations must be accompanied by a detailed offer of proof, preferably in the form of affidavits";

  d.  "The offer of proof must challenge the veracity of the affiant, not that of his informant"; and

  e.  "[T]he challenged statements in the affidavit must be necessary to a finding of probable cause."

Omissions from an affidavit may also entitle a defendant to a *Franks* hearing if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentional or reckless misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir.), *cert. denied*, 531 U.S. 1000 (2000). If inclusion of the omitted facts would not have affected the probable cause determination, no *Franks* hearing is required. *Id*.

  The defendant's motion fails. He is not entitled to a *Franks* hearing because the challenged information is not false, and the affidavit provides ample probable cause to search Garcia-Espinoza's apartment. The purported omissions, when added to the affidavit, do not destroy the probable cause that is readily apparent from the affidavit. Furthermore, even if probable cause was lacking, and since no *Franks* violation occurred, the officers relied in good faith on the validity of the warrant.

  Probable cause is a "practical, common sense" determination that, in the totality of the circumstances, a judge can reasonably conclude that there is "a fair probability" that contraband or evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The affidavit need only enable the judge to conclude that it would be reasonable to seek the evidence in the place indicated." *United States v. Valencia*, 24 F.3d 1106, 1109 (9th Cir. 1994). It is also well established that in drug cases, evidence is likely to be found where the drug dealers live. *See United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986).

  The affidavit clearly ties Garzia-Espinoza to the members of the conspiracy both through observations and intercepted calls. See Affidavit para. 75, and paras. 166-169, and 165-167 (sic - misnumbered) (subject Premises 13, BATES SW-000111-000114). Calls intercepted between co-conspirators Rubio-Garcia and Ofelia Ramirez and between Rubio-Garcia and Alicia Alvarez discuss delivering money to "Aunt Raquel" to be sent to Mexico. She is observed meeting with members of the DTO at Carniceria Apatzingan, the butcher shop and money remitting outlet owned by co-conspirators

Sergio Valencia Garcia and Elizabeth Salazar where she is also employed. She is observed entering her apartment. She is on the lease and the power is in her name. Her vehicles are parked at her apartment and vehicles associated with other members of the conspiracy are observed there also. Finally, Michel Busta-Pena was observed entering the apartment and was observed counting money in the apartment. Busta-Pena had acted as runner for the DTO and undercover officers previously had purchased heroin from her.

Because individuals involved in drug trafficking crimes – in this case laundering drug proceeds – are known to keep evidence of their crime in their residences, the affidavit established, and the Magistrate Judge correctly concluded, that it would be reasonable to search Garcia-Espinoza's apartment.

The challenged language "detectives have observed members of the VARGAS DTO frequent GARCIA-Espinoza's apartment, to include Michel BUSTA-Pena, . . ." is not false or made in reckless disregard of the truth. Garcia-Espinoza is purported to be a member of the Vargas DTO and she is observed there frequently. Busta-Pena is also a purported member of the organization and she is observed there. There is no *Franks* violation and the affidavit established probable cause to search "Aunt Raquel" Garcia-Espinoza's apartment.

Defendant's Motion to Suppress Evidence Seized as a Result of an Illegal Search [Dkt. #41] is **DENIED.**

**IT IS SO ORDERED.**

The Clerk shall send uncertified copies of this order to all counsel of record, and to any party appearing pro se.

Dated this 25th day of January, 2011.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE